UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PARAMJEET S. MALHOTRA et al.,

    Plaintiffs,

    v.

ROBERT D. STEINBERG et al.,

    Defendants.

CASE NO. C09-1618JLR

ORDER DENYING MOTION TO DISMISS

This matter comes before the court on a motion to dismiss brought by Defendants Robert Steinberg and Steinberg & Associates, LLC (collectively, "Steinberg") and joined by Defendants James W. Grace and John L. Scott. (Mot. (Dkt. # 117); Not. of Joinder (Dkt. # 140); Not. of Joinder (Dkt. # 148).) Steinberg argues two separate theories for why the court should dismiss the complaint brought against him by Plaintiffs Paramjeet and Sunita Malhotra. For the reasons stated below, the court rejects both of Steinberg's theories and DENIES the motion to dismiss being fully advised of the pleadings and relevant law, and having reviewed the submissions of the parties (Dkt. # 117).

ORDER- 1

1                          **I.   INTRODUCTION**

2           This case involves claims against former bankruptcy trustee Robert Steinberg,

3    who allegedly defrauded the United States government by orchestrating an illegal

4    kickback scheme connected to sales of real property in bankruptcy proceedings.  (2d Am.

5    Compl. (Dkt. # 108) ¶¶ 1-3.)  Plaintiffs, the Malhotras, are private individuals who are

6    proceeding on behalf of the United States as *qui tam* plaintiffs under the False Claims Act

7    ("FCA").  (*Id.* ¶ 10.)  In this motion, Steinberg asks the court to dismiss the Malhotras'

8    Second Amended Complaint for two reasons:  First, because it fails to allege certain

9    prerequisites to liability under the FCA, namely that the information underlying the claim

10   was not previously publicly disclosed and the Malhotras are an original source of the

11   information.  (Mot. at 4-5.)  The court rejects this argument because the Malhotras do, in

12   fact, allege facts sufficient to show both of these things.  Second, Steinberg argues that

13   the complaint must be dismissed because the Malhotras' FCA claim belongs not to them

14   but to their bankruptcy estate.  (*Id.* at 7.)  The argument here is that the Malhotras had an

15   interest in their FCA claim prior to filing for bankruptcy and hence the claim should have

16   been part of their bankruptcy estate according to the laws of bankruptcy.  (*Id.* at 7-9.)

17   This argument is right about the law of bankruptcy but wrong about how the law applies

18   here.  The Malhotras did not have an interest in the FCA claim until after they filed for

19   bankruptcy protection; thus the claim belongs to the Malhotras because it never became

20   part of the bankruptcy estate.  Accordingly, the court rejects both of Steinberg's

21   arguments and denies Steinberg's motion.

22   //

## II.   BACKGROUND

The Malhotras first encountered Mr. Steinberg in 2006, when he was appointed trustee of their bankruptcy estate. (2d Am. Compl. ¶¶ 85, 87.) The Malhotras filed for bankruptcy protection in June, 2006, and the court appointed Mr. Steinberg trustee of their estate on December 5, 2006, after the case was converted from a Chapter 18 proceeding to a Chapter 11 proceeding. (*Id.* ¶¶ 83, 85.) Shortly thereafter, Mr. Steinberg filed an involuntary petition for bankruptcy of the Malhotras' real estate development company, Lincoln Development, LLC. (*Id.* ¶ 86.) Not long after that, the case was converted to a Chapter 7 proceeding. (*Id.* ¶ 90.)

The Malhotras had a "negative initial 'gut reaction'" to Mr. Steinberg, (Compl. (Dkt. # 1) ¶ 5.2), and began investigating his activities (2d Am. Compl. ¶¶ 91-93). For six months from December 2006 through early 2007, the Malhotras searched "thousands of documents, personally inspected records of his handling of numerous bankruptcy estate properties, and interviewed debtors, witnesses, and Steinberg's business associates." (*Id.* ¶ 93.) The Malhotras allege that their "dogged investigation uncovered a widespread and methodical fraudulent conspiracy on the bankruptcy court . . . ." (*Id.* ¶ 94.)

On November 11, 2009, the Malhotras filed a *qui tam* complaint against Mr. Steinberg and Does 1-20 and served a copy upon the United States. (Compl. ¶ 3.5.) The United States decided not to prosecute the action and on November 29, 2010, gave the Malhotras the green light to pursue the case on the government's behalf as *qui tam* plaintiffs. (*See* Not. of Election to Decline Intervention (Dkt. # 6).)

1        III.   ANALYSIS

2  **A.    Previous Public Disclosure and Original Source Allegations**

3            Steinberg first argues that the Malhotras' Second Amended Complaint fails to

4   allege certain important prerequisites to FCA liability.  (Mot. at 4-5.)  To succeed on an

5   FCA claim, the plaintiff must show that the information underlying her claim has not

6   already been publicly disclosed.  31 U.S.C. § 3730(e)(4)(A); *Meyer v. Horizon Health*

7   *Corp.*, 565 F.3d 1195, 1198-99 (9th Cir. 2009).  This requires two "distinct but related"

8   determinations:  (1) whether the information had previously been disclosed in a hearing

9   to which the United States was a party, in a Congressional investigation, or in the news

10  media; and (2) whether prior disclosure revealed the specific allegations giving rise to the

11  claim as opposed to "mere information."  31 U.S.C. § 3730(e)(4)(A); *Meyer*, 565 F.3d

12  1199.  A plaintiff who cannot show these things can instead show that she is the "original

13  source" of the information.  31 U.S.C. § 3730(e)(4)(A).  An "original source" is one who

14  has "direct and independent knowledge of the information on which the allegations are

15  based and has voluntarily provided the information to the Government before filing an

16  action under this section which is based on the information."  31 U.S.C. § 3730(e)(4)(B).

17          The Malhotras sufficiently allege both of these prerequisites.  On a 12(b)(6)

18  motion to dismiss, the court accepts as true all non-conclusory factual allegations in the

19  complaint, construing all allegations and drawing all reasonable inferences in favor of the

20  plaintiff.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Malhotras allege that, on their

21  own suspicion and initiative, and "[i]n hopes of saving other debtors from the ordeal they

22  were experiencing," they "began an extensive investigation of Steinberg and his work as

1   a trustee and real estate professional." (2d Am. Compl. ¶ 93.)  The Malhotras searched

2   "thousands of documents, personally inspected records of his handling of numerous

3   bankruptcy estate properties, and interviewed debtors, witnesses, and Steinberg's

4   business associates." (*Id.*)  The Malhotras allege that their "dogged investigation

5   uncovered a widespread and methodical fraudulent conspiracy on the bankruptcy

6   court . . . ." (*Id.* ¶ 94.)  These allegations and others contained in the Second Amended

7   Complaint provide ample material from which to infer that the Malhotras were an

8   "original source" of these allegations and that they discovered the information underlying

9   their claim independent of any prior public disclosure. (*See id.*)  Indeed, there is no

10   serious allegation of prior public disclosure in this case beyond Steinberg pointing out

11   that the false statements themselves were made in public. (Mot. at 6.)  But this was not a

12   public disclosure in any plausible construction of the phrase; this was the fraud itself.

13   Accepting the Malhotras' pleaded facts as true, the Second Amended Complaint states a

14   plausible claim for relief that survives this 12(b)(6) motion to dismiss.

15 **B.**     **Ownership of FCA Claim**

16        Next, Steinberg argues that the Second Amended Complaint must be dismissed

17   because the Malhotras do not have standing to bring their FCA claim. (Mot. at 7.)

18   Steinberg argues that the Malhotras do not "own" their *qui tam* claims because those

19   claims in fact belong to their bankruptcy estate. (*Id.*)  The argument goes like this: The

20   actions giving rise to the Malhotras' FCA claim occurred before the Malhotras filed for

21   bankruptcy, and therefore the Plaintiffs had an "interest" in their FCA claim at that time.

22

1 | Thus, under the laws of bankruptcy, the Malhotras' bankruptcy estate took ownership of

2 | their "interest" when the Malhotras filed for Chapter 18 protection. (*See id.*)

3 |       Most of Steinberg's argument withstands scrutiny. It is true that "[w]hen a

4 | bankruptcy petition is filed, an estate is created" that takes ownership of "'all legal or

5 | equitable interests of the debtor in property as of the commencement of the case.'" *In re*

6 | *Frazer*, 377 B.R. 621, 626 (B.A.P. 9th Cir. 2007) (quoting 11 U.S.C. § 541(a)(1)). Thus,

7 | the estate takes ownership of all "interests" of the debtor including causes of action the

8 | debtor may have against third parties. *Id.* Moreover, "interest" is construed broadly to

9 | include "every conceivable interest of the debtor, future, nonpossessory, contingent,

10 | speculative, and derivative." *In re Wood*, 291 B.R. 219, 224 (B.A.P. 1st Cir. 2003). A

11 | cause of action against a third party becomes part of the bankruptcy estate if it "accrues"

12 | prior to bankruptcy, meaning it could have been asserted prior to filing for bankruptcy.

13 | *Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir. 2001). Thus, Steinberg is mostly right

14 | about this.

15 |       Nevertheless, there is one problem with his argument. Under the facts as pleaded

16 | by the Malhotras, the FCA claim against Steinberg had not yet accrued at the time the

17 | Malhotras filed for bankruptcy. (2d Am. Compl. ¶¶ 82-94.) Instead, under the facts in

18 | the Second Amended Complaint, the claim accrued post-filing so the bankruptcy estate

19 | did not take ownership of it. (*Id.*) This is so because the Malhotras became acquainted

20 | with Mr. Steinberg only after they filed for bankruptcy; thus they could not possibly have

21 | asserted their FCA claim against him before filing because they had never met him and

22 | did not know a single thing about the facts underlying their claim against him. (*See id.*)

1    Case law bears out this rather obvious conclusion. The court is aware of only one

2    case that addresses this particular issue, *United States ex rel. Gebert v. Transport*

3    *Administrative Services*, 260 F.3d 909 (8th Cir. 2001). In *Gebert*, the Eighth Circuit

4    found that *qui tam* plaintiffs were barred from bringing their FCA claim because they

5    filed for bankruptcy after the claim had accrued and therefore the bankruptcy estate

6    owned the claims. *Gebert*, 260 F.3d at 913-15. In doing so, the Eighth Circuit employed

7    a simple test to determine whether the FCA claim had accrued prior to bankruptcy and

8    hence was barred: whether the plaintiffs "possessed all of the information necessary to

9    file the *qui tam* claim" before they filed for bankruptcy. *Id.* Here, the Malhotras' FCA

10   claim fails this simple test. The Malhotras possessed *none* of the information necessary

11   to file a *qui tam* claim against Steinberg at the time they filed for bankruptcy. (*See* 2d

12   Am. Compl. ¶¶ 82-94.) Thus, their claim did not accrue until after they filed for

13   bankruptcy and the estate never took ownership of the claim. This means the Malhotras,

14   and not the estate, own the claim.

15                        **IV.    CONCLUSION**

16          Based on the foregoing, the court DENIES the motion to dismiss, rejecting both of

17   Steinberg's arguments (Dkt. # 117).

18          Dated this 11ᵗʰ day of November, 2012.

19

20                                                        JAMES L. ROBART
21                                                        United States District Judge

22

ORDER- 7